AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED/DATE: s/TRAVIS LEVERETT

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
INFORMATION ASSOCIATED WITH THE CELLULAR )
DEVICE ASSIGNED CALL NUMBER (619) 841-9322 ) Case No. M-22-158 -STE
THAT IS STORED AT PREMISES CONTROLLED BY )
CRICKET WIRELESS, LLC (PURCHASED BY AT&T) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):

See Attachment "A"

located in the __Western__ District of __Oklahoma__, there is now concealed (*identify the person or describe the property to be seized*):

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is (*check one or more*):
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Fentanyl with Intent to Distribute |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See attached Affidavit of Special Agent Eric Coburn, HSI, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Eric Coburn, Special Agent (HSI)
Printed name and title

Sworn to before me and signed in my presence.

Date: **Mar 4, 2022**

City and state: **Lawton,** Oklahoma

_____
Judge's signature

SHON T. ERWIN, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| |
|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (619) 841-9322, THAT IS STORED AT PREMISES CONTROLLED BY CRICKET WIRELESS, LLC (PURCHASED BY AT&T) |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Eric Coburn, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call number **(619) 841-9322**, (the "SUBJECT PHONE"), that is stored at premises controlled by Cricket Wireless, LLC (purchased by AT&T), a wireless telephone service provider headquartered at 1025 Lenox Park Blvd. NE, Atlanta, GA 30319. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Cricket Wireless, LLC (purchased by AT&T) to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with HSI, and I have been employed with HSI since May 2009. I am currently assigned to the HSI office in Oklahoma City, Oklahoma. During my time in law enforcement, I have successfully completed the Federal Criminal Investigator Training Program and the Immigration and Customs Enforcement (ICE) Special Agent Academy at the Federal Law Enforcement Training Center (FLETC). I have also participated in the investigation of computer cyber-crimes, money laundering, narcotics distribution, and other federal crimes. I have also gained experience through attending mobile forensics training, financial investigations training, cyber-crimes investigations training, drug investigations training, seminars, and everyday work. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance have been committed, are being committed, and will be committed by Julia Rodriguez Ortega ("**Rodriguez**") and Rodolfo De La Cruz Florentino ("**Florentino**"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

4.      On February 9, 2022, at approximately 9:48 a.m., while conducting patrol on Interstate 40, in Canadian County, Oklahoma, Oklahoma Bureau of Narcotics (OBN) Agent C. Gentry conducted a traffic stop on a black 2014, Jeep Compass, bearing California License Plate 7MSL734, for following too closely in violation of Oklahoma law.

5.      During the traffic stop, the driver, **Rodriguez**, provided Agent Gentry with a California driver's license and the registration. The sole passenger, **Florentino**, provided Agent Gentry a United States Border Crossing Card (BCC) card issued in **Florentino's** name. Agent Gentry explained why she stopped **Rodriguez** and asked **Rodriguez** to come back to Agent Gentry's vehicle. While **Rodriguez** was in Agent Gentry's vehicle, Agent Gentry performed records checks and prepared a written traffic warning.

6.      While Agent Gentry and **Rodriguez** were still in Agent Gentry's vehicle, Oklahoma Highway Patrol (OHP) Trooper J. Swatzky responded with his K-9, "Stormy," to conduct and open-air sniff of **Rodriguez's** vehicle.  While speaking with **Rodriguez**, Agent Gentry asked **Rodriguez** if she would consent to search of her vehicle, which she did.  A short time later, Trooper Swatzky's K-9 alerted to the presence of the odor of an illegal substance.  Thereafter, officers began a search of the vehicle.

7.      During the search, approximately 11 bundles of a compressed and sealed substance, packaged in a manner consistent with the packaging of illegal narcotics, were discovered in a concealed compartment in the rear cargo area of the vehicle. At that point, the bundles were secured, and arrangements were made to transport the bundles and vehicle

to OBN headquarters. After the discovery of the bundles, **Rodriguez** and **Florentino** were placed under arrest and taken to OBN headquarters.

8.  After arriving at headquarters, a more thorough search of the vehicle was conducted, and an additional six bundles were found in the spare tire compartment of the vehicle. Once the search was completed, several of the bundles were field tested, utilizing a TruNarc narcotics analyzer. The results of the TruNarc analysis indicated that the bundles contained a detectable amount of fentanyl. Upon completion of the field test, the bundles were weighed. The total weight of the bundles was approximately 40 pounds.

9.  During post-*Miranda* interviews with **Rodriguez** and **Florentino**, both provided conflicting explanations as to what they knew about each other, how long they had known each other, what locations they were traveling to, and when they were scheduled to return home. A review of **Rodriguez** and **Florentino's** border crossings revealed that they have both crossed the southern border together on multiple occasions in the last month. Both **Rodriguez** and **Florentino** consented to searches of their cell phones, including the TARGET PHONE, which belonged to **Rodriguez**.[1] While it appears that **Rodriguez** turned off location data on the TARGET PHONE at some point, the TARGET PHONE does contain evidence relevant to the nature of Rodriguez and Florentino's travel at the time they were transporting fentanyl.

---

[1]   While location data from Florentino's phone might also provide relevant evidence, a warrant for cell site data from that phone number is not being sought at this time due to it being serviced by a foreign provider.

10.     Both Rodriguez and Florentino were charged in a criminal complaint signed by United States Magistrate Judge Suzanne Mitchell on February 10, 2022. Their case, M-22-85-SM, is currently pending.

11.     In my training and experience, I have learned that Cricket Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

12.     Based on my training and experience, I know that Cricket Wireless can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Cricket Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

13. Based on my training and experience, I know that Cricket Wireless also collects per-call measurement data, which it also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data. Based on my training and experience, the location information described in this paragraph and in the above paragraph can be used to determine the validity of a suspect's stated route of travel, identify potential co-conspirators, and establish a timeline and route for a particular drug smuggling operation.

14. Based on my training and experience, I know that wireless providers such as Cricket Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Cricket Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE'S user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

16. I further request that the Court direct Cricket Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Cricket Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

17. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
ERIC COBURN
Special Agent HSI

Subscribed and sworn to before me on March 4, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(619) 841-9322**, that are stored at premises controlled by Cricket Wireless, LLC (purchased by AT&T), a wireless telephone service provider headquartered at 1025 Lenox Park Blvd. NE, Atlanta, GA 30319.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 6, 2022, through February 9, 2022:

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity

                Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

       vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

     i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received: as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)].

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, Sections 841 and 846 involving **Julia Rodriguez Ortega** and **Rodolfo De La Cruz Florentino** during the period February 6, 2022, through February 9, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel

assisting the government in this investigation, and outside technical experts under government control are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.